**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

LARA B. FISHER,               :

      Plaintiff,             :

vs.                         :     CA 16-0608-MU

NANCY A. BERRYHILL,      :
Acting Commissioner of Social Security,
                              :

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 26 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 28 (endorsed order of reference)). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the September 14, 2017 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 26 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for (Continued)

# I. Procedural Background

Plaintiff Fisher filed an application for a period of disability and disability insurance benefits on September 18, 2013, alleging disability beginning on April 30, 2006. (*See* Tr. 70-71.) Fisher's claim was initially denied on December 10, 2013 (Tr. 34-39) and, following Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 41-42), a hearing was conducted before an ALJ on March 12, 2015 (Tr. 441-63). On June 26, 2015, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 15-25.) More specifically, the ALJ concluded that through the date last insured, December 31, 2009, Plaintiff retained the residual functional capacity to perform a reduced range of light work and, further, that in light of her residual functional capacity, she was capable of performing those light jobs identified by the vocational expert ("VE") during the course of the administrative hearing. (*See id.* at 19-25; *compare id. with* Tr. 459-61 (vocational expert's hearing testimony that based on the hypothetical posed, consistent with the ALJ's ultimate RFC determination, the claimant would be capable of performing work as a mail clerk, information clerk, and office helper)). The Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council and, on October 12, 2016, the Appeals Council denied Fisher's request for review. (Tr. 6-9.) Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to ankylosing spondylitis, fibromyalgia, history of uveitis, major depressive disorder, and generalized anxiety disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.      The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.**

**2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 30, 2006 through her date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).**

**3.      Through the date last insured, the claimant had the following severe impairments: ankylosing spondylitis; fibromyalgia; history of uveitis; major depressive disorder; [and] generalized anxiety disorder (20 CFR 404.1520(c)).**

.      .      .

**4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).**

.      .      .

**5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b). That is, the claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for 6 hours each during an 8 hour workday; frequently use the upper and lower extremities to push and pull; frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs; no climbing of ladders, ropes or scaffolds; frequently reach, handle, finger, and feel; no exposure to extreme heat or cold; no work around unprotected heights or dangerous machinery; limited near and far visual acuity based on history of uveitis resulting in work limitations only of no driving of automotive equipment or automobile but would be able to navigate ordinary hazards in the workplace such as boxes in the hallway; able to perform simple**

**routine tasks involving no more than simple, short instructions; and able to sustain concentration and attention for 2 hour periods.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant, at the time of her alleged onset date, was 29 years of age. Currently, the claimant is 38 years old. The claimant has past work experience as an administrative assistan[t]. The claimant stated that her medical problems started after her first child was born. The claimant testified that she has fibromyalgia and eye infections. Additionally, the claimant complained of depression and anxiety. The claimant stated that she has a driver's license and does not have any driving restrictions. Through December 2009, the claimant sought treatment with South Alabama Medical, and at the hearing, the claimant reported seeking treatment 1-2 times a month, but this is not reflected in the records. She reported having chronic fatigue and sleep issues through the date last insured of December 31, 2009.

Before proceeding further, it should be noted that some of the exhibits in the record are after the date last insured of December 31, 2009. These exhibits include 5F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 15F, 16F, 17F, 18F, 19F, 20F and 21F.

From April 30, 2006 until December 31, 2009, the longitudinal medical evidence of record does not support the degree of impairment alleged or the presence of disabling mental or physical impairments. The claimant was treated through the South Alabama Medical Clinic in February 2008, the notes indicate she was a stay at home mother with two children. In April 2008, the claimant presented with complaints of depression and anxiety, and she reported experiencing panic attacks 2-3 times a week. However, the claimant was not seeking mental health treatment, and she had no history of mental health hospitalization. In May 2008, she presented with complaints of joint pain, anxiety and depression. The examination findings indicated that the claimant's appearance and affect were much better. Thereafter, in August 2008, the claimant reported hurting all over with tender points noted on examination. She also reported experiencing anxiety. She was diagnosed with ankylosing spondylosis and fibromyalgia.

ANA lab testing on April 21, 2008 was negative. Likewise, on May 21, 2008, testing for rheumatoid arthritis was negative. The sedimentation rate was within normal ranges at 5. It was noted that the claimant's c-reactive protein was outside of normal ranges at 0.04 but RPR qualitative was non-reactive.

The claimant also sought treatment from E. Franklin Rawlings, MD in April 2008. Dr. Rawlings notes indicate a diagnosis of chronic uveitis. However, these notes also reflect improvement (referenced as significant) with treatment. The undersigned has considered the claimant's diagnosed eye inflammation in the residual functional capacity, and it is noted that for the relevant period the claimant is precluded from driving automotive equipment but would be able to navigate ordinary hazards in the workplace such as boxes in the hallway.

In July 2008, the claimant was examined by John Huntwork, M.D. in an office visit. Dr. Huntwork stated that the claimant complained of fatigue, anxiety, blurred vision and chronic diarrhea. It is noted that this reference to complaints of chronic diarrhea is inconsistent with reports in Exhibit 6F wherein the claimant denied having diarrhea symptoms. Nevertheless, Dr. Huntwork noted on examination that the claimant exhibited a full range of motion in all extremities. He diagnosed the claimant with ankylosing spondylitis, refractory uveitis, fibromyalgia and IBS. He further reported in his notes that the claimant was unable to function in the workplace and would require a flexible schedule. He noted that the claimant was unable to maintain concentration because of pain and would have frequent absenteeism. The undersigned has given this opinion no weight because it is not consistent with objective testing including negative ANA results and x-ray findings, and it is not consistent with the claimant's reported

activities during this period including caring for her children and performing all household chores.

The claimant also underwent a psychological consultative evaluation with Lucile Williams, Psy.D. on August 19, 2008. Dr. Williams noted that the claimant had no history of psychiatric treatment or hospitalization. With regard to her daily activities, the claimant reported she was able to take care of her children, cook, wash clothes, watch television, read and shop in stores. Dr. Williams' diagnostic impression included major depressive disorder, recurrent, and the undersigned has considered the opinion from Dr. Williams in the residual functional capacity above with regard to the mental non-exertional limitations.

On September 12, 2008, the claimant was examined by Henrietta Kovacs, M.D. in a physical consultative examination. The claimant presented with complaints of joint pains in her wrists, knees, feet, shoulders and low back pain. On exam, Dr. Kovacs noted that the claimant's range of motion was, in general, good in all joints with some limited range of motion noted in the dorsolumbar spine regarding extension. However, there was normal muscle tone, and the claimant was able to heel/toe walk and squat without complaints of pain. Dr. Kovacs' diagnostic impression included a history of recurrent uveitis, ankylosing spondylitis, fibromyalgia, anxiety, depression, headache complaints and diarrhea complaints. Dr. Kovacs did not assign any limitations to the claimant. The undersigned has given the examination findings by Dr. Kovacs, which are within the relevant period, greater weight in support [of] the residual functional capacity above.

On September 22, 2008, Dr. Huntwork completed and signed a medical status letter. He noted that the claimant was in the "horrendous situation of having young children to take care of but having varied physical complaints." The claimant reported musculoskeletal pain in her knees, but examination findings by Dr. Huntwork were normal. The examination documented full range of motion with no redness in either eye from inflammation secondary to uveitis. The claimant exhibited a full range of [motion in the] peripheral joints with some tenderness noted that was characteristic of fibromyalgia. The claimant's lab findings, however, were positive for HLA-B27, but the sedimentation rate (a blood test to reveal inflammatory activity in the body) was normal. Dr. Huntwork treated the claimant with only a low dose of steroids despite his report that the claimant would require a flexible schedule and would experience absenteeism. Indeed, Dr. Huntwork opined that the claimant was disabled.

The undersigned assigns no weight to the opinion from Dr. Huntwork in Exhibit 14F because his opinion is not consistent with the examination findings from Exhibits 2F or 14F. Moreover, the claimant had normal x-rays and lab reports in Exhibits 6F and 22F and a normal examination in

Exhibit 4F. Moreover, Dr. Huntwork's opinions are undermined by the claimant's reported activities of daily living noted by the consultative examiner in Exhibit 3F. According to the report in Exhibit [3]F, the claimant, in August 2008, stated that her daily activities included caring for her children, cooking, washing clothes, watching television, reading and shopping in stores. Moreover, the consultative examiner reported that the claimant had stopped working when she got married, and after having a baby, [because] her husband did not want her to work. Given these inconsistencies in both the notes from Dr. Huntwork regarding examination findings, the acknowledged activities of daily living in the consultative report and the other examination findings in Exhibits 4F, 6F and 22F, no weight is assigned to the opinions offered by Dr. Huntwork in Exhibits 2F and 14F. As an aside, it is also noted that the claimant stated at the hearing she had only been treated by Dr. Huntwork for a brief period with no further treatment thereafter because of a lack of funds. However, the record documents other medical treatment during the relevant period, including consultative examinations.

The claimant was treated at the Mostellar [C]linic in May 2009, and x-rays of the lumbar spine were normal. At a return visit, trigger points were noted on exam. In September 2009, the claimant denied having any symptoms of diarrhea but trigger points were again noted. She was diagnosed with fibromyalgia, back pain and uveitis. It is also noted that these records reflect that the claimant was characterized as having no lumbar abnormality with no sacroiliac joint abnormality demonstrated.

The medical evidence for the relevant time period of April 30, 2006 until December 31, 2009, fails to establish the level of restricted functioning the claimant has alleged. The claimant's allegations for this period regarding her limitations are not supported by the medical evidence or her acknowledged activities of daily living. The medical evidence documents diagnoses of fibromyalgia, ankylosing spondylitis, uveitis, major depressive disorder and anxiety; however, these records also document essentially normal examination findings as well as essentially normal lab results and x-ray findings. Moreover, the claimant's daily activities[,] including caring for her children, performing all household chores, driving, shopping and taking care of her personal needs[,] also undermine the credibility of her functional limitations as alleged for the relevant period. The claimant also reported no side effects from medications during this period.

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record, including the claimant's activities of daily living, the objective medical evidence including diagnostic tests such as blood tests and x-rays, and the examination findings of Dr. Kovacs in Exhibit 4F. The medical evidence does not

support the claimant's allegations of totally incapacitating symptomatology from April 30, 2006 until December 31, 2009. Likewise, the undersigned has considered the opinion of Dr. Williams in Exhibit 3F in arriving at the mental non-exertional limitations outlined above.

.    .    .

**6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

.    .    .

**7.      The claimant was born on September 27, 1976 and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.      Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).**

.    .    .

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational based, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:

Mail clerk, non-postal (light, unskilled) DOT 209.687-026
     US          750,000
     Regional   14,000

Information clerk (light, unskilled) DOT 237.367-018
     US          900,000
     Regional   16,000

Office helper (light, unskilled) DOT 239.567-010
     US          800,000
     Regional   13,000

The vocational expert also identified the job of storage facility rental clerk in response to the hypothetical. However, a review of the requirements of the job in the DOT and the environmental limitations outlined above would preclude the job of storage facility rental clerk. Nevertheless, the undersigned finds that the jobs identified represent significant numbers existing in the regional and national economies. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.** **The claimant was not under a disability, as defined in the Social Security Act, at any time from April 30, 2006, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).**

(Tr. 17, 18, 19-23, 23 & 24-25 (internal citations omitted; emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the

> RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

---

[2]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light, unskilled jobs identified by the vocational expert ("VE") during the course of the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Fisher asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to assign controlling weight to the opinions of the treating physician, Dr. John Huntwork, and in adopting her own medical opinion in violation of SSR 96-6p and

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

*Marbury v. Sullivan*; and (2) the ALJ reversibly erred, under SSR 83-20 and HALLEX I-2-6-70(A), in failing to call on the services of a medical expert to determine the onset of Plaintiff's impairments.

### A. Opinions of Plaintiff's Treating Physician, Dr. John Huntwork.

Plaintiff's primary assignment of error is that the ALJ reversibly erred, in violation of 20 C.F.R. § 404.1527(d) and SSR 96-2, by failing to assign controlling weight to the opinions of Fisher's treating physician, Dr. John Huntwork, and, instead, adopting her own medical opinion in violation of SSR 96-6p and *Marbury v. Sullivan*.[4] In this case, Dr.

---

[4]     Because Plaintiff only briefly discusses the second "part" of her argument, dealing with *Marbury v. Sullivan* (*see* Doc. 18, at 5), this Court deals with this portion of her argument parenthetically. Initially, the undersigned notes that there can be no question but that in a specially concurring opinion in *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992), Senior Circuit Judge Frank Johnson emphasized that "[a]n ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians." *Id.* at 840. In support of this conclusion, Judge Johnson directly cited *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) for the proposition that "'[a]bsent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the [Commissioner].'" *Id.* In *Marbury*, of course, the ALJ disregarded the medical diagnoses of the plaintiff's psychogenically caused seizures as provided by his doctors, *see id.;* here, however, the ALJ readily accepted Huntwork's diagnoses of ankylosing spondylitis, fibromyalgia, and uveitis (Tr. 17). What the ALJ did not accept was Huntwork's conclusory and speculative opinions that plaintiff is disabled (Tr. 301) and, otherwise, would have high absenteeism and could not engage in activities that would not allow freedom of movement, a flexible schedule, and unpredictable periods of rest (*compare id. with* Tr. 138), several of which not only invade the dispositive issue reserved to the Commissioner but, as well, were otherwise properly rejected for the stated reasons set forth by the ALJ. Accordingly, *Marbury v. Sullivan, supra*, does not control disposition of this matter.

This Court has consistently recognized that in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer v. Astrue*, 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013) ("[N]umerous courts have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."), *aff'd*, 542 Fed.Appx. 890 (11th Cir. Oct. 29, 2013); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation (Continued)

Huntwork wrote a "To Whom it may Concern" letter on July 21, 2008, following what appears to have been Plaintiff's only office visit to the rheumatologist (*compare* Tr. 138 (letter) *with* Tr. 302-03 (examination notes from Dr. Huntwork dated July 21, 2008) & Tr. 449 (Fisher's hearing testimony that she only saw Huntwork on one occasion)), and a letter penned by Huntwork to another physician, Dr. Steven Fineburg, dated September 22, 2008 (Tr. 300-01). The letter dated July 21, 2008, reads, in relevant measure, as follows:

_____

altered and citation omitted)). Therefore, any suggestion by Plaintiff that the ALJ's rejection of Dr. Huntwork's various opinions somehow "divests" the record of substantial support for the RFC determination is simply incorrect. Indeed, here, the ALJ's RFC assessment, *compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)), is both "linked to" and supported by substantial evidence in the record, namely, Dr. Huntwork's own objective examination findings (Tr. 302-03; *compare id. with* Tr. 300-01 ("The physical examination in this case does show a full range of motion. She has anisocoria. There is no redness in either eye at this time. She is not currently experiencing photophobia. She has full range of motion in the peripheral joints as well. There is tenderness in the areas characteristic of fibromyalgia. The most striking tenderness would be along the line of the sacroiliac joints. Recent lab studies showed a positive HLA-B 27. The sed[imentation] rate was normal.")), other relevant examination findings/medical evidence (Tr. 134 (showing significant improvement of granulomatous uveitis); Tr. 143-50 (reflecting mostly normal objective examination findings); Tr. 161 (x-rays of the lumbar spine, right and left sacroiliac, demonstrated no lumbar spine abnormality and no sacroiliac joint abnormality); & Tr. 439-40 (mostly normal/negative lab results from April 31, 2008 and May 21, 2008)), and Plaintiff's description of her daily activities and her ability to perform work-related activities to consultative examiner Dr. Lucile T. Williams during the relevant time period (*see* Tr. 140-41 (Fisher presented to Williams showing good grooming and personal hygiene and described her daily activities as including listening to music, taking care of her sons, cooking when she feels good, washing and drying clothes, occasionally going to the grocery store, and watching television and reading when she can concentrate). Therefore, the undersigned cannot find that the second portion of Plaintiff's first assignment of error has merit.

I saw Ms. Wescovich in my office on this date. Her diagnoses are:
1. Ankylosing spondylitis
2. Refractory, recurrent uveitis
3. Fibromyalgia
4. Refractory diarrhea (? Inflammatory Bowel Disease)

An individual thusly affected would be unable, in my opinion, to function in the workplace. She would be unable to concentrate due to pain. She would need freedom of movement, a flexible schedule, and frequent, unpredictable periods of rest. She would experience frequent absenteeism and high medical costs. These limitations are based on musculoskeletal, ophthalmologic and gastrointestinal symptomatology related to the above diagnoses, particularly ankylosing spondylitis.

(Tr. 138.) Some two months later, on September 22, 2008, without again examining Plaintiff, Dr. Huntwork wrote a letter to Dr. Steve Fineburg, which reads, in relevant measure, as follows:

[Ms. Wescovich] is thirty-one years old. She finds herself in the horrendous situation of having some young children to take care of, but having a variety of physical complaints which leave her in considerable pain and even unable to get out of bed much less work. She describes this as generalized, constant pain, although in talking with her there are some patterns to the pain. She certainly has morning stiffness and inactivity gelling. Her knees, although clinically not abnormal, are the worst area of pain followed by her hips and low back. Additional symptoms include a chronic, somewhat refractory uveitis. She also has unexplained diarrhea.

.    .    .

The physical examination in this case does show a full range of motion. She has anisocoria. There is no redness in either eye at this time. She is not currently experiencing photophobia. She has full range of motion in the peripheral joints as well. There is tenderness in the areas characteristic of fibromyalgia. The most striking tenderness would be along the line of the sacroiliac joints.

Recent lab studies showed a positive HLA-B 27. The sed rate was normal.

Diagnostic considerations in this case include pre-radiographic ankylosing spondylitis with uveitis, and fibromyalgia. With unexplained diarrhea, Inflammatory bowel disease would certainly be a consideration in this case.

My inclination is to try to treat her with low dose steroids.

I do think that she is disabled. She has objective diseases of various kinds.

Without access to appropriate medical care, i.e. anti-TNF agents at a cost of $1500.00 to $1600.00 per month, she would be unable to consistently function at a level that would allow her to enter the workforce. She would have absenteeism and could not engage in activities that did not allow for freedom of movement, a flexible schedule, etc.

(Tr. 300 & 301.)

Although it is unclear to the undersigned whether, in fact, Dr. Huntwork can be considered a treating physician, because he only examined Fisher on one occasion, the law in this Circuit is clear that regardless of a physician's specific status "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 2017 WL 1430964, *1 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'"). Accordingly, it bears noting that "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other

citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language

from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir.

2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not
> bolstered by the evidence; (2) evidence supported a contrary finding; or
> (3) treating physician's opinion was conclusory or inconsistent with the
> doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1241
> (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to
> give the opinion of a treating physician controlling weight, and those
> reasons are supported by substantial evidence, there is no reversible
> error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21,

2010) (per curiam).

In this case, the ALJ accorded no weight to either letter opinion offered by Dr.

Huntwork (*compare* Tr. 21 *with* Tr. 22).

> In July 2008, the claimant was examined by John Huntwork, M.D. in an
> office visit. Dr. Huntwork stated that the claimant complained of fatigue,
> anxiety, blurred vision and chronic diarrhea. It is noted that this reference
> to complaints of chronic diarrhea is inconsistent with reports in Exhibit 6F
> wherein the claimant denied having diarrhea symptoms. Nevertheless, Dr.
> Huntwork noted on examination that the claimant exhibited a full range of
> motion in all extremities. He diagnosed the claimant with ankylosing
> spondylitis, refractory uveitis, fibromyalgia and IBS. He further reported in
> his notes that the claimant was unable to function in the workplace and
> would require a flexible schedule. He noted that the claimant was unable
> to maintain concentration because of pain and would have frequent
> absenteeism. The undersigned has given this opinion no weight because
> it is not consistent with objective testing including negative ANA results
> and x-ray findings, and it is not consistent with the claimant's reported
> activities during this period including caring for her children and performing
> all household chores.

.    .    .

> On September 22, 2008, Dr. Huntwork completed and signed a medical
> status letter. He noted that the claimant was in the "horrendous situation of
> having young children to take care of but having varied physical
> complaints." The claimant reported musculoskeletal pain in her knees, but

examination findings by Dr. Huntwork were normal. The examination documented full range of motion with no redness in either eye from inflammation secondary to uveitis. The claimant exhibited a full range of [motion in the] peripheral joints with some tenderness noted that was characteristic of fibromyalgia. The claimant's lab findings, however, were positive for HLA-B27, but the sedimentation rate (a blood test to reveal inflammatory activity in the body) was normal. Dr. Huntwork treated the claimant with only a low dose of steroids despite his report that the claimant would require a flexible schedule and would experience absenteeism. Indeed, Dr. Huntwork opined that the claimant was disabled.

The undersigned assigns no weight to the opinion from Dr. Huntwork in Exhibit 14F because his opinion is not consistent with the examination findings from Exhibits 2F or 14F. Moreover, the claimant had normal x-rays and lab reports in Exhibits 6F and 22F and a normal examination in Exhibit 4F. Moreover, Dr. Huntwork's opinions are undermined by the claimant's reported activities of daily living noted by the consultative examiner in Exhibit 3F. According to the report in Exhibit [3]F, the claimant, in August 2008, stated that her daily activities included caring for her children, cooking, washing clothes, watching television, reading and shopping in stores. Moreover, the consultative examiner reported that the claimant had stopped working when she got married, and after having a baby, [because] her husband did not want her to work. Given these inconsistencies in both the notes from Dr. Huntwork regarding examination findings, the acknowledged activities of daily living in the consultative report and the other examination findings in Exhibits 4F, 6F and 22F, no weight is assigned to the opinions offered by Dr. Huntwork in Exhibits 2F and 14F. As an aside, it is also noted that the claimant stated at the hearing she had only been treated by Dr. Huntwork for a brief period with no further treatment thereafter because of a lack of funds. However, the record documents other medical treatment during the relevant period, including consultative examinations.

(*Id.*)

And although the ALJ appears to analyze the two letter opinions somewhat separately (*compare* Tr. 21 *with* Tr. 22), it is clear from the latter analysis (*see* Tr. 22) that the ALJ was rejecting both letter opinions, to the extent they are at all different, for the same reasons, namely those opinions are inconsistent with Dr. Huntwork's own objective examination findings, Plaintiff's report of daily activities to the examining psychologist in August of 2008 and admission that she stopped working because her

husband did not want her to work, and other objective medical findings of record, including normal x-rays, mostly-normal lab reports, and the objective findings of consultative examiner Dr. Henrietta Kovacs (*see id.*). It makes perfect sense to the undersigned to combine these two letter opinions for analysis given both have as their "basis" Dr. Huntwork's July 21, 2008 examination of Plaintiff. (*Compare* Tr. 138 (July 31, 2008 letter) & 300-01 (September 21, 2008 letter) *with* Tr. 302-03 (Huntwork's July 21, 2008 examination of Fisher)). Initially, the undersigned would note that the ALJ was not required to accord controlling weight to Huntwork's bald statement that Plaintiff was "disabled" and the additional statement that Fisher "would be unable to consistently function at a level that would allow her to enter the workforce[]" (Tr. 301), because these statements clearly "encroach" upon dispositive issues reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner.").  More importantly, this Court agrees with the ALJ that Huntwork's letter opinions in this case cannot be "squared" with (and, therefore, are inconsistent with) his own physical examination findings of a full range of motion, including in the peripheral joints, no redness in either eye and no photophobia, and a normal sedimentation rate[5] (*compare* Tr. 300-01 *with* Tr. 302-03).

---

[5]        A normal sedimentation rate, as noted by the ALJ (Tr. 22), is indicative of a lack

(Continued)

Indeed, the only positive "finding" by Huntwork, beyond certain tenderness in areas characteristic of fibromyalgia (Tr. 300 & 303), was the positive HLA-B27 shown on lab studies (Tr. 301); however, this finding merely serves to "confirm" the diagnoses of ankylosing spondylitis and uveitis, *see* http://emedicine.medscape.com/article/1201027-overview (last visited September 12, 2017, at 10:29 a.m.), but does not serve to underscore the limitations suggested by Huntwork, particularly given the normal sed rate and lack of inflammatory response by Fisher's body. *See Gilabert, supra,* 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where the physician's opinion is inconsistent with his own medical records). Moreover, this Court cannot find that the ALJ reversibly erred in finding that Huntwork's letter opinions were inconsistent with Fisher's description of daily activities to consultative psychologist Dr. Lucille Williams on August 19, 2008, as well as her report to Williams about the reasoning behind her decision to stop working (*see* Tr. 140-41 (Fisher's report to Dr. Williams that she stopped work in April of 2006 because her husband did not want her to work after she got married and had a child, and her further report to Williams that as of the day of the examination, her daily activities included taking care of her sons, listening to music, washing and drying clothes, occasionally going to the grocery store, cooking when she felt good, etc.)), or in finding those opinions inconsistent with the remaining relevant medical evidence of record (*see* Tr. 144-45 & 148-50 (September 12, 2008 examination findings by Dr. Henrietta Kovacs reveal only anisocoria (pupil dilation) of the right eye but no redness

---

of inflammatory activity/response in the body. *See* http://www.mayoclinic.org/tests-procedures/sed-rate (last visited September 12, 2017, at 10:42 a.m.).

or inflammation of the eye; no swelling, redness or tenderness of the upper extremities, with 4/5 grip strength bilaterally and biceps strength 5/5 bilaterally; no edema, varicosity or ulcer of the lower extremities, with dorsal pedal pulses 2+/4 and symmetric; mostly good range of motion of all joints, with the exception of a limited range of motion of the dorsolumbar spine on extension; basically intact exam of the central nervous system, with an inability to elicit the Achilles reflex but with a negative Babinski and Romberg; heel and toe walking accomplished without any particular difficulties; and squatting was okay but painful); Tr. 161 (May 12, 2009 x-rays of the lumbar spine, right and left sacroiliac, demonstrated no lumbar spine or sacroiliac joint abnormality, but did reveal calcification bilaterally in the pelvis which was interpreted to likely represent calcified uterine fibroids); & Tr. 439-40 (lab results from April 21, 2008 and May 21, 2008 reflect only the presence of the HLA-B27 antigen but ANA and rheumatoid factor screen were negative and Fisher's sedimentation rate was normal)). *See Gilabert, supra,* 396 Fed.Appx. at 655 (good cause for rejecting a treating physician's opinions exists when those opinions are not bolstered by the evidence or where the evidence supports a contrary finding).[6] Accordingly, because the ALJ did not err in refusing to assign any

---

[6] Plaintiff contends that the ALJ improperly determined that the evidence of record is inconsistent with Dr. Huntwork's expressed opinions, particularly given that Dr. Kovacs' diagnoses are consistent with the diagnoses of Huntwork. This Court, however, cannot find that consistency of diagnoses serves to underscore/support Dr. Huntwork's letter opinions because diagnoses, in and of themselves, do not "speak" to limitations attributable to diagnosed impairments. *Cf. Moore v. Barnhart,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting that diagnoses or "the mere existence of [] impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."). Instead, what does "speak" to limitations attributable to diagnosed impairments are objective clinical and laboratory findings, of which there are precious few noted by Dr. Kovacs and Dr. Huntwork. Therefore, this Court cannot find that the ALJ incorrectly determined that Dr. Huntwork's letter opinions were inconsistent with the examination findings of Dr. Kovacs, as well as those referenced by Dr. Huntwork himself.

weight to Dr. Huntwork's letter opinions, this Court discerns no basis for a remand based upon Fisher's first assignment or error.

**B.**    **Whether the ALJ, in Accordance with SSR 83-20 and HALLEX I-2-6-70(A), Should Have Called on the Services of a Medical Expert to Determine the onset of Plaintiff's Impairments.**    Plaintiff contends that, in light of the letter opinions of Dr. Huntwork, *supra*,  "the [ALJ] should have consulted with a medical expert in order to determine the severity of [her] impairments during the period of [her] onset date to [her] date last insured." (Doc. 18, at 5; *see also id.* at 6 ("[T]here is a lack of medical treatment showing the severity of Plaintiff's impairments before the date last insured. A medical expert was needed to determine the severity of Plaintiff's impairments. In failing to acquire an opinion from a medical expert, the [ALJ] reversibly erred under Social Security Ruling 83-20 and HALLEX I-2-6-70(A).")).[7]

The Plaintiff is certainly correct that HALLEX I-2-6-70(A) "encourages" an ALJ to consult with a medical expert when the Plaintiff alleges disability that began before her date last insured and the facts may conceivably support the claim (*see* Doc. 18, at 5) and that SSR 83-20 provides, in relevant part, as follows:

> In some cases, it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing,

---

[7]    Plaintiff's argument here that the ALJ should have called a medical expert to determine the severity of her impairments during the relevant period, particularly since the ALJ in this case determined that Fisher's severe impairments (during the relevant period) included ankylosing spondylitis, fibromyalgia, and a history of uveitis (Tr. 17) seems inconsistent. Regardless, as explained *infra,* Plaintiff's second assignment of error is due to be overruled.

the . . . ALJ[] should call on the services of a medical advisor when onset
must be inferred.

*Id.*

Fisher's reliance upon HALLEX I-2-6-70(A) is unavailing because it does not
appear that HALLEX provisions carry the force of law. *Compare George v. Astrue,* 338
Fed.Appx. 803, 805 (11th Cir. Jul. 8, 2009) ("[E]ven if we assume that § I-2-8-40 of
HALLEX carries the force of law—a very big assumption—the ALJ did not violate it[.]")
*with Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000) ("As HALLEX does not have the
force and effect of law, it is not binding on the Commissioner and we will not review
allegations of noncompliance with the manual.") and *Hall v. Commissioner of Social
Sec.,* 2007 WL 4981325, *10 (M.D. Fla. Feb. 9, 2007) ("HALLEX[,] like all administrative
manuals[,] lacks the legal authority to bind the ALJ."). Regardless, Plaintiff is not entitled
to a remand in this case because she has shown neither that the ALJ violated § I-2-6-
70(A) nor has she shown prejudice. *See Carroll v. Social Sec. Admin., Commissioner,*
453 Fed.Appx. 889, 892 (11th Cir. Dec. 12, 2012) (discussing HALLEX and noting that it
has "held that an agency's violation of its own governing rules must result in prejudice
before [the Eleventh Circuit] will remand to the agency for compliance."). And, here,
Fisher has not and cannot establish a violation of § I-2-6-70(A) because that HALLEX
provision does not mandate the use of a medical expert ("ME"), but only
encourages/suggests consulting an ME, and "thus cannot fairly be the basis of error on
the part of the ALJ." *Lanier v. Colvin,* 2016 WL 4386086, *4 (S.D. Ala. Aug. 16, 2016).

Turning to the language of SSR 83-20, it is clear that a medical advisor should be
called upon only when onset of a disabling impairment must be inferred and, as
explained, "it may be possible, based on the medical evidence[,] to reasonably infer that

the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination[.]" *Id.* In this case, Plaintiff's last date insured was December 31, 2009 (and, indeed, her alleged onset date was April 30, 2006) and the task for the ALJ was to determine whether Fisher had disabling impairments before the date last insured. Of course, Plaintiff's first (and only) examination by Dr. Huntwork was in July of 2008 (*see* Tr. 138 & 300-03), some seventeen (17) months before the date last insured, and there is evidence in the record from the relevant period (that is, April 30, 2006 though December 31, 2009) from other treating sources (*see, e.g.,* Tr. 134-37, 157-61 & 424-31), as well as consultative sources (*see, e.g.,* Tr. 140-41 & 143-50). Therefore, in this case, as in *Lanier, supra,* the ALJ was not considering onset of disability prior to the "'first recorded medical examination' since [a] history of medical treatment exists in the record from long before the date last insured." *Lanier, supra,* at *4 (citations omitted). As a result, the ALJ was not required to consult a medical advisor because she had no need to "'reasonably infer . . . the onset of a disabling impairment[.]'" *Id.,* quoting SSR 83-20.

For these reasons, and because the Plaintiff makes no argument that the ALJ failed to identify other work existing in significant numbers in the national economy that she  was capable of performing during the relevant time period (that is, the alleged onset of April 30, 2006 through the date last insured of December 31, 2009) based upon the ALJ's RFC assessment, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Sec.,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age,

education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 18th day of September, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**